IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARK A. MCFARLAND,** | |
| Petitioner, | |
| v. | Case No. 18-CV-01395–NJR |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C § 2255 filed by Petitioner Mark A. McFarland ("McFarland") (Doc. 1). In his petition, McFarland claims he was improperly sentenced and denied effective assistance of counsel. (*Id*.). For the reasons set forth below, the Court denies McFarland's Section 2255 Petition.

FACTUAL & PROCEDURAL BACKGROUND

McFarland owned and operated the business Second Chance of Springfield, Inc. ("Second Chance") (Doc. 1 of SDIL Case No. 16-30016-NJR) (hereafter referred to as "criminal case"). Second Chance was incorporated in the state of Illinois by McFarland in 2012. (*Id.*). From April 22, 2009, to August 22, 2013, McFarland filed ten bankruptcy petitions in the United States District Court for the Central District of Illinois in the Springfield Division (*Id.*). Each of these cases was assigned to and heard by same Bankruptcy Judge (*Id.*). McFarland's cases were each dismissed after his failures to follow

through with orders given by the court (*Id.*). After filing the last bankrupcy petition on August 22, 2013, the Bankruptcy Judge dismissed McFarland's petition and prohibited McFarland from filing anymore bankruptcy cases with the United States Bankruptcy Court for the Central District of Illinois for a period of 180 days (*Id.*). The Bankruptcy Judge further prohibited McFarland from filing in the Central District of Illinois for a period of three years unless he paid the full filing fee at the time of filing (*Id.*).

On October 6, 2014, McFarland filed for Chapter 11 bankruptcy on behalf of Second Chance in the United States Bankruptcy Court for the Southern District of Illinois in the East St. Louis Division (hereinafter referred to as "bankruptcy case") (Doc. 1 of criminal case). Bankruptcy petitions can only be filed within the district where the debtor lived, had residence, had a principle place of business or its principal assets for a period of 180 days preceding the filing of the petition. 28 U.S.C. § 1408(1). Filing for bankruptcy creates an automatic stay by which creditors are prevented from collecting debts or taking other actions to recover from the debtor's property. 11 U.S.C. § 362(a). The Chapter 11 Bankruptcy Code provides indebted corporations with the ability to repay debts with a payment plan. 11 U.S.C. § 1322(a). In the petition, McFarland listed Sangamon and Madison counties as Second Chance's principal place of business and also provided both a street address and a Post Office Box number located in Springfield, Illinois (Doc. 50 of criminal case).

Cook Sales, a debtor, filed a motion to dismiss the bankruptcy petition on November 11, 2014, noting that Second Chance's principle place of business was in Springfield, Illinois, in the Central District of Illinois (Doc. 7). In a hearing on November

12, 2014, the question of venue was brought to Bankruptcy Judge Laura K. Grandy's attention because Second Chance had no address in the Southern District (*Id*). Shortly after on November 26, 2014, McFarland amended his bankruptcy petition, providing that Second Chance had a business address at 200 West Third Street, Suite 310-11 in Alton Illinois (*Id.*). Upon further investigation, it was discovered that McFarland did not enter the lease until November 26, 2014, but McFarland had asked the landlord to back date the lease to September 25, 2014. Attorney Mark Skaggs ("Skaggs"), of the United States Trustee's Office, pressed McFarland about the apparent discrepancies in McFarland's petition and the evidence against him, however, McFarland maintained that the landlord was incorrect, and an oral lease had been entered prior to the signing of the lease (*Id.*). On December 23, 2014, Judge Grandy granted McFarland's motion to dismiss the bankruptcy case and prohibited McFarland from filing anymore bankruptcy petitions for a period of 90 days (*Id.*).

On February 2, 2016, a grand jury for the Southern District of Illinois returned an Indictment charging McFarland with two counts of Making a False Statement under Penalty of Perjury in a Bankruptcy Case, 18 U.S.C. § 152(3); one count of Falsifying Records in a Bankruptcy Case, 18 U.S.C. § 152(8); and two counts of Making a False Statement under Oath in a Bankruptcy Case, 18 U.S.C. § 152(2). (Docs. 7, 1 of criminal case). On February 21, 2017, McFarland entered a plea agreement wherein he pled guilty to Counts Four and Five of the Indictment for the two counts of Making a False Statement under Oath in a Bankruptcy Case (Doc. 44 of criminal case).

Through the plea agreement, McFarland indicated that he understood the

statutory maximum penalties (*Id.*). He indicated that he was aware of the Title 28 provisions of the United States Code (*Id.*). McFarland knowingly and voluntarily waived the right to contest any aspect of the conviction sentence, including the manner in which his sentence was determined and imposed, reserving the right to appeal the substantive reasonableness of the term of his imprisonment (*Id.*). McFarland indicated he was fully satisfied with the representation received from the defense counsel (*Id.*). He further indicated that he had adequate opportunity to discuss the potential consequences of his plea and had all of his questions answered by his defense counsel (*Id.*).

At the sentencing hearing held on July 24, 2017, the United States presented testimony from Skaggs (Doc. 7). He attested to McFarland's previous bankruptcy filings in the Central District of Illinois and the conduct underlying the charges in the indictment (*Id.*). McFarland was sentenced to 12 months of imprisonment (Doc. 69 of criminal case). That sentence was at the low end of the advisory guideline range calculated by the United States Probation Office (Doc. 56 of criminal case). Additionally, McFarland was sentenced to three years of supervised release with the first six months to be served on home detention and ordered to pay a fine of $3,000.00 (*Id.*).

On July 16, 2018, McFarland filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1). The Government subsequently filed its response (Doc. 7). After the Court granted several of McFarland's requests for extension, he then failed to file a reply to the Government's response.

### COLLATERAL REVIEW UNDER 28 U.S.C. § 2255

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal, in which a

defendant may complain of nearly any error, Section 2255 may be used only to correct errors that litigate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. The United States Court of Appeals for the Seventh Circuit has emphasized that relief under Section 2255 "is available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude, or a fundamental defect that resulted in a complete miscarriage of justice. *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013). *Accord Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (Section 2255 relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations"). Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).

## ANALYSIS

### I. Waiver

Before considering the substance of McFarland's Section 2255 petition, this Court must determine whether it has jurisdiction to consider his arguments. The Government argues that McFarland waived his right to bring a Section 2255 motion when he signed the plea agreement, pleading guilty to Counts 4 and 5 of the Indictment. Further, the Government asserts no exceptions to the waiver apply that would allow McFarland to bring the first three claims in his Section 2255 motion.

"It is well-settled in [the Seventh Circuit], as well as in virtually every circuit that has considered the question, that defendants may waive their right to appeal as part of a written plea agreement, and [the Seventh Circuit] has consistently upheld valid appeal waivers and dismissed appeals taken in contravention." *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir. 1997). "Plea agreements are governed by ordinary contract principles." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). A waiver of appeal is enforceable "if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007). A district court is not required to have any specific dialogue about the waiver to determine that the defendant knowingly and voluntarily waived; the defendant's signature on the plea agreement and his statements during the plea colloquy are evidence of his knowing and voluntary waiver. *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999); *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001); *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002). The content and language of the plea agreement itself, as well as the colloquy where necessary, governs the determination as to the validity of the waiver. *Woolley*, 123 F.3d at 632.

Here, McFarland waived his right to bring a collateral appeal pursuant to Section 2255. The plea agreement he signed expressly states that "[McFarland] knowingly and voluntarily waives the right to contest any aspect of the conviction and sentence, including the manner in which the sentence was determined or imposed, that could be contested under Title 18 or Title 28, or under any other provision of federal law" (Doc. 44, p. 9 of criminal case). Counts 1, 2, and 3 of McFarland's Title 28 motion challenge the

Court's sentencing (Doc. 1). In Count 1, McFarland argues that the Court improperly sentenced him to serve the first six months of his supervised released on home detention after 12 months of incarceration (*Id.*). McFarland argues in Count 2 that the Court improperly sentenced him by not giving a reason for 3 years of supervised release (*Id.*). In Count 3, McFarland asserts ineffective assistance of McFarland's counsel, but the substance of the count actually attempts to challenge sentencing and not the effectiveness of his counsel (*Id.*). The Court did not apply a sentence in excess of the Sentencing Guidelines, therefore, the exception provided in paragraph 4, Section IV, of the plea agreement does not apply (Doc. 44 of criminal case). Because McFarland waived his right to challenge his sentencing in the plea agreement, Counts 1, 2, and 3 of his motion are barred.

In *Jones*, 167 F.3d 1142, the Seventh Circuit addressed the issue of the enforcement of a plea or cooperation agreement that waived the defendant's right to file a petition under Section 2255. The Seventh Circuit noted in *Jones* that so long as such a waiver is made knowingly and voluntarily, it is enforceable unless the defendant can establish a claim of ineffective assistance of counsel in connection with the negotiation of the agreement. *Id.* at 1145. In other words, "waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives *only with respect to those discrete claims which relate directly to the negotiation of the waiver.*" *Id.* (emphasis added).

Accordingly, *Jones* requires this Court to explore the nature of McFarland's fourth claim to determine whether the challenge relates directly to the negotiation of the waiver. In his petition, McFarland asserts his counsel was ineffective for not making an objection

to Skaggs's testimony at the sentencing hearing, which related to McFarland's history of filing bankruptcy claims (Doc. 1).

## II.     McFarland's Claim of Ineffective Assistance of Council

McFarland seeks to have his sentence revised and corrected, arguing his counsel was ineffective in failing to object to the testimony of the prosecution's witness. The Government argues that McFarland did not demonstrate that his counsel's performance fell below an objective standard of reasonableness at the sentencing hearing by failing to object to Skaggs's testimony.

Claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Under the law of this Circuit, because counsel is presumed effective, McFarland "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). To succeed, McFarland must show that his counsel's performance fell below an objective standard of reasonableness *and* that his deficient performance so prejudiced his defense that he was deprived of a fair trial. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984)). Stated another way, under the *Strickland* test, the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial. *Massaro,* 538 U.S. at 501.

The first prong of the *Strickland* test, classified as the "performance prong," calls for a defendant to direct the Court to specific acts or omissions forming the basis of his claim. *Trevino,* 60 F.3d at 338. The Court then must determine whether, in light of all the

circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id.* While making this assessment, the Court must be mindful of the strong presumption that counsel's performance was reasonable. *Accord Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). If the defendant satisfies the performance prong, he must then meet the "prejudice prong" of *Strickland.* This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States,* 357 F.3d 703, 707-08 (7th Cir. 2004), *citing Strickland,* 466 U.S. 52 (1985).

In analyzing whether McFarland has satisfied the two-prong test set out by *Strickland*, McFarland specified that his counsel, William Berry ("Berry"), failed to object to the presentation of Skaggs's testimony at the sentencing hearing (Doc. 1). It is then left to the Court to determine whether that failure fell outside of the wide range of professional competence and had such an impact as to have prejudiced the outcome of McFarland's sentencing hearing.

"In the sentencing context, the district court is not bound by the rules of evidence, and, so long as it is reliable, may consider a wide range of evidence, including hearsay, that might otherwise be inadmissible at trial." *United States v. Ghiassi*, 729 F.3d 690, 695 (7th Cir. 2013) (citing FED. R. EVID. 1101(d)); *United States v. Grigsby*, 692 F.3d 778, 788 (7th Cir. 2013); *United States v. Nunez*, 627 F.3d 271, 281 (7th Cir. 2010). At the sentencing hearing, Skaggs testified to McFarland's history of filing for bankruptcy. Berry's failure to object to Skaggs's testimony was reasonable because the testimony was permitted in the sentencing context (Doc. 7). Because Berry's performance was reasonable, it cannot

be said that Berry's failure to object to the testimony was an error that prejudiced McFarland. *Massaro,* 538 U.S. at 501. The testimony provided the Court with information pertinent to McFarland's behavioral history and abuse of the bankruptcy court system. The testimony was permitted because it was reliable, and the information it provided was relevant to McFarland's charges and in determining McFarland's sentence.

Accordingly, the Court finds that McFarland's assertion lacks merit. He has not established that his counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. Consequently, McFarland's fourth and final assertion is rejected by the Court. The valid waiver of his right to collateral appeal in the plea agreement barred McFarland's first three assertions of his Section 2255 motion. Accordingly, the Court **DENIES** McFarland's Section 2255 petition (Doc. 1).

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases instructs the district court to "issue or deny a certificate of appealability when it enters a final order averse to the applicant." "[A] district court's dismissal of a motion on the ground that it is an unauthorized successive collateral attack constitutes a final order within the scope of 28 U.S.C. § 2253(c), and therefore a certificate of appealability is required." *See Sveum v. Smith*, 403 F.3d 447, 448 (7th Cir. 2005) (per curium). 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would

find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012), *quoting Tennard v. Dretke*, 542 U.S. 274, 281 (2004). *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set forth above, the Court has determined that McFarland has not stated any grounds for relief under Section 2255, and reasonable jurists would not find that conclusion debatable or wrong. Thus, McFarland has not made a "substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## NOTICE

If McFarland wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If McFarland chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if McFarland files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, McFarland will only be allowed to proceed on his appeal if he obtains a certificate of appealability. Here, the undersigned District Judge has already

declined to issue a certificate of appealability. Thus, McFarland must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If McFarland cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues McFarland plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if McFarland wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by McFarland showing excusable neglect or good cause.

## CONCLUSION

For the reasons set forth above, McFarland's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED.** McFarland's request to vacate the imposition of a fine as part of his sentence, which was filed in his Motion for Extension of Time (Doc. 16), is also **DENIED**. This action is **DISMISSED with prejudice**. The Court **DECLINES** to issue a certificate of appealability. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:  June 5, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**